**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:22-CV-00227-RJC-DSC**

| | | |
|---|---|---|
| **PETER MARCO, LLC d/b/a PETER MARCO JEWELRY and PETER VOUTSAS,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| **BANC OF AMERICA MERCHANT SERVICES, LLC, FIRST DATA MERCHANT SERVICES, LLC, FIRST DATA CORPORATION, FIRST DATA GLOBAL LEASING, FIRST DATA MERCHANT SERVICES CORPORATION and BANK OF AMERICA, N.A.,** | ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on Defendants Banc of America Merchant Services, LLC, First Data Merchant Services, LLC, First Data Corporation, First Data Global Leasing, First Data Merchant Services Corporation, and Bank of America, N.A.'s Motion to Dismiss (Doc. 38), and the parties' briefs and exhibits.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and the Motion is now ripe for the Court's consideration.

1

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>granted in part and denied in part</u>.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

All facts alleged in the First Amended Complaint are accepted as true. Plaintiff Peter Marco, LLC is a limited liability company organized and existing under the laws California with its principal place of business in Beverly Hills, California. Peter Marco was founded by Plaintiff Peter Voutsas, who is the sole member of Peter Marco. Peter Marco sells jewelry at a prominent retail location on Rodeo Drive in Beverly Hills.

Defendant Banc of America Merchant Services, LLC ("BAMS") is a limited liability company organized and existing under the laws of Delaware. Defendant is owned and managed by Defendant Bank of America N.A. BAMS is engaged in the business of providing electronic payment processing services, including credit and debit card processing services, to businesses throughout the United States.

Defendant First Data Merchant Services, LLC ("FDMS") is a limited liability company organized and existing under the laws of Florida. Defendant FDMS provides front and back-end payment processing services for Defendants BAMS and Bank of America. Defendant First Data Corporation ("FDC") is a corporation organized and existing under the laws of Delaware. Defendant FDC is an assignee and/or assignor related to FDMS's rights under the agreement in dispute. FDC also owns Defendant First Data Global Leasing ("FDGL"), which is a wholly owned subsidiary of FDC.

To accept card payments, a merchant like Peter Marco must first open an account for payment processing services with a payment processor/acquirer and a member bank that is

2

contracted with payment card brands. An acquirer must perform underwriting prior to approving a merchant account for processing and must continue to underwrite and monitor accounts. Member Alert to Control High Risk ("MATCH") is a database of previously terminated merchants created and maintained by MasterCard and relied upon by payment brands to screen and regulate merchant access to the payment system. When a merchant is placed on the MATCH list, the business name, principals, and any business partners are all recorded on file and banned from opening any new merchant accounts elsewhere.

On or about August 28, 2015, Peter Voutsas visited a local Bank of America branch and met with a representative to discuss payment processing for Peter Marco. The representative provided Voutsas with an application for a merchant account for Peter Marco and worked with him to complete it. The representative also helped Voutsas lease a credit card processing machine under an equipment lease agreement with FDGL. BAMS contracted with FDMS as a service provider with respect to its card processing and specifically all Peter Marco card processing.

The application was approved, and the parties entered into a merchant processing agreement ("MPA") wherein a merchant account was created in the name of Peter Marco. The MPA that Voutsas received consists of five pages and does not explain where to access any of the other related documents. The MPA refers to a program guide, but it does not state where that document can be accessed nor which version applies. The program guide contains forum-selection and choice-of-law clauses for the Western District of North Carolina and state law of North Carolina. Approximately a week after the August 2015 application submission, the Peter Marco merchant account was activated and Defendants began providing program services under the MPA.

3

On May 17, 2019, the series of transactions at issue began when a person by the name of Abel A. Galvez Carrillo visited Voutsas at the Peter Marco store. Carrillo represented to Voutsas that he was acting as an attorney-in-fact for Linda Montano Cano to make a large purchase of jewelry. Carrillo presented Voutsas with a copy of a power of attorney, his driver's license, Cano's passport, and other documentation evidencing that a pre-loaded Visa debit card with several million United States dollars would be used to make the purchase. Carrillo wanted to purchase six items of jewelry for $4,502,867.00. Carrillo requested that Voutsas process separate charges to pay for approximately forty percent of the total purchase price. He would pay the remaining balance by wire transfer or with the Visa debit card.

Voutsas informed Carrillo that Peter Marco would process the initial payment only if Cano came to the store to confirm her identify and approve the charges. Voutsas also informed Carrillo that the charges would have to be approved by the appropriate officers at the Bank of America branch located near the Peter Marco store as representatives and agents of BAMS and FDMS. Voutsas, Cano, and Carrillo visited the Bank of America branch located at 9454 Wilshire Boulevard in Beverly Hills and spoke with Assistant Manager Zhanna Tatevosyan. Voutsas explained the sale to Tatevosyan and emphasized how important it was that each individual transaction be verified before he submitted them for authorization. Voutsas also emphasized that he would only submit them for processing if Bank of America as representatives and agents of BAMS and/or FDMS approved them in advance.

During the meeting, Cano and Carrillo submitted the following documents to Tatevosyan: Carrillo's driver's license, power of attorney for Cano, a copy of Cano's passport, copies of the documents evidencing that the Visa debit card account was pre-loaded and funded, and copies of the invoices for the jewelry. Cano also used her mobile phone to access the bank account

4

associated with the debit card and showed Tatevosyan the balance in the account. It reflected sufficient funds to make the contemplated payments. Only after the meeting with Tatevosyan and obtaining her approval of the transactions did Voutsas submit them for processing through the Peter Marco merchant account. Twenty-eight transactions were submitted in the total amount of $2,322,846.23. BAMS took no issue with running the transactions in different intervals.

Soon after, and for reasons that remain unclear to Voutsas, Cano initiated a total of twenty-eight chargebacks in the amount of $2,322,846.23. Bank of America informed Voutsas that the transaction was frozen. Bank of America placed the chargeback amount in a reserve account and then returned it to the sender. Plaintiffs proceeded to ensure Defendants would suffer no loss as a result of the transactions. They did not revoke the ACH authorization Peter Marco gave Defendants. Plaintiffs also left the direct deposit account of Peter Marco open so that Defendants could debit fees, which totaled approximately $99,000.

On or about June 5, 2019, Voutsas was informed in a letter from BAMS that Peter Marco's merchant account was being terminated. BAMS did not provide any facts in support of its decision to terminate the merchant account. In the letter, BAMS informed Voutsas that it intended to hold in a reserve account the sum of $317,607.73 until "…the expiration of all chargeback periods and after we have determined that there is no further exposure or liability to us arising from the transactions that you have submitted through us." Doc. 10 at ¶ 42. BAMS and/or FDMS terminated the Peter Marco account and placed Plaintiffs' names on MATCH because of the May 2019 transactions. Voutsas continued to make monthly payments on the lease to FDGL, even though the equipment had become unusable as a result of the termination. Following termination and placement on the MATCH list, Voutsas was unable to accept electronic payments from his customers. His business and reputation were damaged.

5

Plaintiffs demanded removal from the MATCH list, release of the $317,607.73 being held in reserve, and a refund of the $99,000 in fees. Defendants did not acquiesce and Plaintiffs filed this action in Los Angeles County Superior Court on February 2, 2022. Doc. 1, Ex. 1. Defendants removed the action to the United States District Court for the Central District of California on March 4, 2022. Doc. 1. Plaintiffs amended their Complaint on March 25, 2022. Doc. 10. The Central District of California transferred the action to the Western District of North Carolina on May 20, 2022. Doc. 36. Plaintiffs bring claims for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), breach of fiduciary duty (Count III), aiding and abetting breach of fiduciary duty (Count IV), fraud (Count V), California Unfair Business Practices § 17200 (Count VI), negligence (Count VII), and declaratory relief (Count VIII). Defendant moved to dismiss the Complaint in its entirety on June 3, 2022. Doc. 38.

## DISCUSSION

### I. Standard of Review

In reviewing a 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs. Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); see Robinson v. Am. Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark [ ] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era…it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79. As the Fourth Circuit noted in Migdal v. Rowe Price-Fleming Intl, Inc.:

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal v. Rowe Price-Fleming, Intl Inc., 248 F.3d 321, 326 (4th Cir. 2001).

Further, in Iqbal the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. at 678. This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id.; see E. Shore Mkts. Inc. v. J.D. Assocs., LLP, 213 F.3d 175, 180 (4th Cir. 2000) (explaining that while the court accepts plausible factual allegations made in a claim as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted interferences, unreasonable conclusions, or arguments").

7

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitled relief. Iqbal, 556 U.S. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief 'will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke, 490 U.S. at 328; see Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 F. App'x 278, 293 (4th Cir. 2013). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

## II. Governing Law

The law of the case doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.'" U.S. v. Lentz, 524 F.3d 501, 528 (4th Cir. 2008) (quoting United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)). As a practical matter, this doctrine promotes "finality and efficiency [in] the judicial process[,]" and is based on the "sound policy that when an issue is once litigated and decided,

8

that should be the end of the matter." <u>Prassas Capital, LLC v. Blue Sphere Corporation</u>, No.

3:17-CV-131-RJC-DCK, 2019 WL 2881560 at n.3 (W.D.N.C. July 3, 2019) (quoting

<u>Christianson v. Colt</u>, 486 U.S. at 816 and <u>United States v. Smelting Refining & Mining Co.</u>, 339

U.S. 186, 198 (1950)). "The doctrine requires courts to uphold earlier decisions in the same case

unless: '(1) a subsequent trial produces substantially different evidence, (2) controlling authority

has since made a contrary decision of law applicable to the issue, or (3) the prior decision was

clearly erroneous and would work manifest injustice.'" <u>Prassas Capital</u>, 2019 WL 2881560 at n.3

(quoting <u>Sejman v. Warner-Lambert Co.</u>, 845 F.2d 66, 69 (4th Cir. 1988)).

 As Defendants' brief notes, the District Court in California found that the North Carolina

forum-selection and choice-of-law clauses in the program guide are part of the MPA. Doc. 35 at

4. Plaintiffs "signed the Confirmation Page of the MPAA confirming [they] received the

program guide, and the MPAA states 'Client acknowledges having received and read a copy

of…the Program Guide.'" Id. (citing <u>Sarmiento v. BMG Entertainment</u>, 326 F. Supp. 2d 1108,

1110 (C.D. Cal. 2003) ("The opportunity to read a clearly identified and intelligible forum

selection clause before accepting the contract provides sufficient notice to plaintiff.")).

 Plaintiffs argue first that the California court's decision was limited to whether they are

bound by the forum-selection clause. But in the Order Granting Motion to Transfer, the

California court held that "because North Carolina law applies to Plaintiffs' claims, a North

Carolina court will be substantially more familiar with the *governing law*." Doc. 35 at 6

(emphasis added). Plaintiffs also argue that law of the case doctrine should not apply because the

California court's findings were "clearly erroneous" and "would work a manifest injustice

against Plaintiffs." Doc. 44 at 6. Plaintiffs cite no case law supporting their position and instead

accuse the California court of disregarding their allegations in the First Amended Complaint. But

9

the California court directly addresses Plaintiffs' allegations and ultimately finds them unconvincing on the point of governing law. Doc. 35 at 6-7. Under law of the case doctrine, and for the reasons stated in Defendants' brief, this Court adopts the holding of the California court and applies North Carolina law to the Plaintiffs' claims.

### III. Defendants' Rule 12(b)(6) Motion to Dismiss the Claims Should Be Denied in Part and Granted in Part.

#### A. Count I – Breach of Contract

To allege breach of contract in North Carolina, Plaintiffs must allege facts sufficient to show that (1) there was a valid contract between Plaintiff and Defendant and (2) Defendant breached the terms of that contract. Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000); see Griffith v. Banc of Am. Merch. Servs. LLC, No. 3:19-cv-00533-RJC-DSC, 2020 WL 9349524 at *3 (W.D.N.C. July 30, 2020). The MPA represents the valid contract between the parties. The issue is whether Plaintiffs have pled facts sufficient under Iqbal's plausibility standard – that there is "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

Plaintiffs argue the terms of the MPA include Defendants' responsibility to provide credit card processing services "in a reasonable manner, including properly underwriting Peter Marco, investigating any abnormal account activity, and providing processing services without interruption." Doc. 10 at ¶51. Plaintiffs allege breach of these terms occurred when Defendants

> unreasonably failed to underwrite the Peter Marco account, failed to contact Peter Marco or Mr. Voutsas regarding its processing activity or business model to determine if Peter Marco was operating in compliance with the Card Brand Rules, and then failed to defend or even inquire as to Visa's notification regarding Peter Marco. Defendants then unreasonably put Peter Marco and Mr. Voutsas on the MATCH list.

Id. at ¶52. Defendants disagree as to the terms of the agreement, citing portions of the program guide and the "Dokson Declaration," an exhibit attached to their Motion to Dismiss. Doc. 38. There is a factual dispute as to the terms of the MPA, and consideration of materials outside the First Amended Complaint would convert this Motion to Dismiss into a Motion for Summary Judgment. See Fed. R. Civ. P. 56. Considering the allegations in the First Amended Complaint in the light most favorable to the Plaintiffs, they have satisfied Twombly-Iqbal by plausibly pleading a breach of contract.

For these reasons, the undersigned respectfully recommends Defendants' Motion to Dismiss Count I be denied.

### B. Count II – Breach of the Covenant of Good Faith and Fair Dealing

Under North Carolina law, a claim for breach of the covenant of good faith and fair dealing is not an independent cause of action. It requires a viable underlying claim for breach of contract. Polygenex Int'l, Inc. v. Polyzen, Inc., 515 S.E.2d 457, 461-62 (N.C. App. 1999) (affirming lower court's sanction against plaintiff for filing claim for breach of covenant of good faith because absent a breach of contract, there is no cause of action for breach of an implied covenant of good faith); see also Ada Liss Group v. Sara Lee Corp., 2009 WL 3241821 (M.D.N.C. Sept. 30, 2009) (citing Murray v. Nationwide Mut. Ins. Co., 472 S.E.2d 358, 368 (N.C. App. 1996) and Lord of Shalford v. Shelley's Jewelry, Inc., 127 F. Supp. 2d 779, 787-88 (W.D.N.C. 2000)); accord Dove Air Inc. v. Florida Aircraft Sales, LLC, 2011 WL 3475972 (W.D.N.C. Aug. 9, 2011) (in case involving a borrower-lender relationship, a "claim for breach of covenant of good faith and fair dealing is 'part and parcel' of a claim for breach of contract").

As discussed above, Plaintiffs have plausibly alleged a breach of contract claim. But as Defendants' brief notes, North Carolina courts hold "that a claim for breach of the covenant of

good faith and fair dealing based on facts identical to those supporting a breach of contract claim should not be pursued separately." BioSignia, Inc. v. Life Line Screening of Am., Ltd., 2014 WL 2968139 at *5 (M.D.N.C. July 1, 2014) (citing Shelley's Jewelry, 127 F. Supp. 2d at 787; Mech. Indus. v. O'Brien/Atkins Assocs., P.A., No. 1:97-CV-99, 1998 LEXIS 5389 at *1 (M.D.N.C. Feb. 4, 1998)).

Plaintiffs attempt to argue in the alternative to their breach of contract claim that because they never received a copy of the MPA signed by Defendants, there is no enforceable agreement. Doc. 10 at ¶61. But Plaintiffs argue elsewhere in their Complaint that the MPA is an enforceable agreement and Defendants breached its terms. Id. at ¶50. Plaintiffs continue in Count II to repeat the same facts underlying their breach of contract claim in Count I: that Defendants unreasonably terminated Plaintiffs' account, placed them on the MATCH list, and assessed fees. Id. (compare ¶¶52-53 with ¶¶64-69). Plaintiffs also allege the same damages for both claims. Id. (compare ¶58 with ¶71).

For these and other reasons stated in Defendants' brief, the undersigned respectfully recommends Defendants' Motion to Dismiss Count II be granted.

### C. Count III – Breach of Fiduciary Duty

North Carolina courts have resisted providing an exhaustive definition of what constitutes a fiduciary relationship. As a result, the analysis of whether Plaintiffs have alleged a breach of fiduciary duty presents a challenging inquiry that resists simple formulation. Viewed in light of a 12(b)(6) motion, this inquiry engages federal pleading standards, the interpretation of state and federal case law, North Carolina statutory and common law, Plaintiffs' Complaint, and the relevant agreement between the parties. See Troche v. Bimbo Foods Bakeries Distribution, Inc., No. 3:11-CV-234-RJC-DSC, 2014 WL 1669112 at *3 (W.D.N.C. Apr. 28, 2014).

12

The North Carolina Court of Appeals has held that, "To establish a claim for breach of a fiduciary duty, claimants are 'required to produce evidence that (1) defendants owed them a fiduciary duty of care; (2) defendants…violat[ed]…their fiduciary duty; and (3) this breach of duty was a proximate cause of injury to plaintiffs.'" <u>French Broad Place, LLC v. Asheville Sav. Bank, S.S.B.</u>, 259 N.C. App. 769, 787, 816 S.E.2d 886 (2018) (quoting <u>Farndale Co., LLC v. Gibellini</u>, 176 N.C. App. 60, 68, 628 S.E.2d 15 (2006)). North Carolina generally recognizes two types of fiduciary relationships: (1) "those that arise from legal relationships such as attorney and client ... partners, principal and agent ... and (2) those that exist as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other." <u>S.N.R. Mgmt. Corp. v. Danube Partners</u>, 141 LLC, 189 N.C.App. 601, 659 S.E.2d 442, 451 (2008) (quoting <u>Rhone–Poulenc Agro S.A. v. Monsanto Co.</u>, 73 F.Supp.2d 540, 546 (M.D.N.C.1999)).

When the situation does not cleanly fit into a previously defined category, the question of whether a fiduciary relationship exists is left to the finder of fact. <u>HAJMM Co. v. House of Raeford Farms, Inc.</u>, 328 N.C. 578, 403 S.E.2d 483, 489 (N.C.1991). A fiduciary relationship "can arise in a variety of circumstances ... and may stem from varied and unpredictable factors." <u>Id.</u>

Discussing the long-settled aversion to recognizing fiduciary relationships among contracting businesses, the North Carolina Court of Appeals held in <u>Tin Originals, Inc. v. Colonial Tin Works, Inc.</u>, that, absent "special circumstances" causing one party to have "superiority and influence" over the other, no fiduciary relationship can exist between mutually interdependent businesses with equal bargaining power who dealt at arm's length. 98 N.C.App. 663, 391 S.E.2d 831 (N.C.App.1990). But while such fiduciary relationships are rare, no court has gone so far as to say that such a relationship cannot exist among business entities. The issue

at this stage is to determine whether, in light of the lofty standard for proving such claims, Plaintiffs have alleged sufficient facts to "raise the right to relief above the speculative level." Twombly, 550 U.S. at 555. The Court concludes that Plaintiffs have done so. They allege that as Defendants' clients and processing partners, they were owed a fiduciary duty of care because Defendants oversaw their debit and credit card processing, maintained and controlled their funds in a custodial account, and conducted some amount of regulatory oversight. Doc. 10 at ¶74. Plaintiffs have alleged that Defendants violated the fiduciary duty by failing to properly investigate their processing activity, wrongfully concluding that they committed transaction laundering, and improperly placing them on the MATCH list. Id. at ¶¶77-79. Finally, Plaintiffs have alleged that Defendants' purported breach of duty was a proximate cause of the consequences of being placed on the MATCH list. Id. at ¶80.

Whether or not Plaintiffs will be able to prove "special circumstances" is not a question before the Court at present. It suffices for now that they have alleged well pleaded facts for a breach of fiduciary duty claim. For these reasons, the undersigned respectfully recommends Defendants' Motion to Dismiss Count III be denied.

### D. Count IV – Aiding and Abetting Breach of Fiduciary Duty

Plaintiffs' claim for aiding and abetting breach of fiduciary duty fails because "no such cause of action exists in North Carolina." Laws v. Priority Trustee Servs. of N.C., 610 F.Supp.2d 528, 532 (W.D.N.C. 2009), aff'd, 375 Fed.Appx. 345 (4th Cir. 2010). In Laws, the Court held that:

> It is undisputed that the Supreme Court of North Carolina has never recognized such a cause of action. The only North Carolina Court of Appeals decision recognizing such a claim, Blow v. Shaughnessy, 88 N.C.App. 484, 489, 364 S.E.2d 444, 447–48 (1988), involved allegations of securities fraud, and its underlying rationale was eliminated by the United States Supreme Court in

14

> *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 114
> S.Ct. 1439, 128 L.Ed.2d 119 (1994). Accordingly, the court dismisses this claim.

*Id.* Since then, the North Carolina Court of Appeals has recognized that *Blow* is no longer good law, and favorably quoted the decision in *Laws*. *See* *Bottom v. Bailey*, 767 S.E.2d 883, 889 (N.C. Ct. App. 2014). Plaintiffs cite a Western District of North Carolina case as recognizing this cause of action, but the court was applying Delaware law there. *See* *Worley Claims Servs., LLC v. Jefferies*, 429 F. Supp. 3d 146, 159 (W.D.N.C. 2019).

For these reasons, the undersigned respectfully recommends Defendants' Motion to Dismiss Count IV be *granted*.

### E.  Count V – Fraud

To plead a fraud claim under North Carolina law, a plaintiff must allege: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage. *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 194-95 (M.D.N.C. 1997). The heightened pleading requirements of Fed. R. Civ. P. 9(b) "provide defendants with fair notice of claims against them and the factual ground upon which they are based, forestall frivolous suits, prevent fraud actions in which all the facts are learned only following discovery, and protect defendants' goodwill and reputation." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013). "Specifically, Rule 9(b) requires the party alleging fraud to state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Fourth Circuit has held that the "circumstances" required to be pled with particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making misrepresentations and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

15

Plaintiffs' fraud claim involves two separate interactions with Defendants' agents. The first occurred on August 18, 2015, when Plaintiffs met with a BAMS representative at a local Bank of America branch to complete a payment processing application. Doc. 10 at ¶91. Plaintiffs allege that on that date, the BAMS representative:

> Falsely represented to Plaintiffs that the credit card services provided by them were safe and secure, that the credit card processing system was capable of identifying suspicious transactions prior to being approved by Defendants so as to avoid costs to merchants, and that they had a policy of investigating any allegations of suspicious transactions thoroughly and in good faith before drawing any conclusion about who was responsible for the transaction.

Id. Plaintiffs further allege that the Defendants made additional misrepresentations through their representative concerning underwriting procedures, processing compliance, and return of reserve funds. Id. at ¶92-94. Plaintiffs argue that these misrepresentations were calculated to deceive them into opening a merchant account, induced them into entering the MPA, and resulted in damages in lost business and withheld reserve funds. Id. at ¶¶98, 102-103.

The second interaction occurred on May 17, 2019, when Plaintiffs met with Defendants' representative Zhanna Tatevosyan prior to authorizing the transactions at issue. Id. at ¶99. Plaintiffs allege that on that date, Tatevosyan "orally represented that Defendants' credit card processing system was safe and secure and would identify fraudulent transactions prior to them being approved by Defendants." Id. Plaintiffs argue that this misrepresentation was reasonably calculated to deceive and made with the intent to deceive because the transactions were not identified as fraudulent prior to their approval, nor was there a "thorough and good faith investigation into the cause of the fraudulent transaction." Doc. 44 at 16; Doc. 10 at ¶100. Finally, Plaintiffs argue that Tatevosyan's oral misrepresentations induced them into moving forward with the transactions at issue, which resulted in damages in lost business and placement on the MATCH list. Doc. 10 at ¶¶36, 102.

Taking Plaintiffs' allegations as true and construing them in the most favorable light, they satisfy the basic pleading requirements of fraud established by the Fourth Circuit in alleging facts that show "the time, place, and contents of the false representations, as well as the identity of the person making misrepresentations and what he obtained thereby." Harrison, 176 F.3d at 784. Further, Plaintiffs allege "detrimental reliance and damages proximately flowing from such reliance with particularity." Culp v. Countrywide Homes, Inc., 2009 WL 2382280 at *6 (W.D.N.C. July 10, 2009) (quoting Frank M. McDermott, Ltd. v. Mortez, 898 F.2d 418, 421 (4th Cir. 1990)).

For these reasons, the undersigned respectfully recommends Defendants' Motion to Dismiss Count V be denied.

### F.  Count VI – California Unfair Business Practices of § 17200

The California Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code 17200. The remedies provided by the UCL are equitable in nature. Nationwide Biweekly Admin., Inc. v. Superior Court, 462 P.3d 461, 464 (Cal. 2020). As a threshold matter, a plaintiff must establish they lack an adequate remedy at law before securing equitable remedies for past harm under the UCL. Sonner v. Premier Nutrition Corp., 971 F.3d 834, 844 (9th Cir. 2020). There appears to be a split among courts in the Ninth Circuit as to whether it is appropriate to dismiss a UCL claim at the pleadings stage when it is premised on identical facts as other claims providing legal remedies. Eason v. Roman Catholic Bishop of San Diego, 414 F. Supp. 3d 1276, 1282 (S.D. Cal. 2019). Some courts decline to do so, citing the Ninth Circuit's "general rule . . . that plaintiffs may plead alternative claims, even if those claims are inconsistent." Byton N.A. Co. v. Breitfeld, 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020) (citing PAE Gov't Servs., Inc. v. MPRI, Inc., 514 F.3d 856, 858-59 (9th Cir. 2007)).

Here, Plaintiffs' Complaint states a claim only under the UCL. North Carolina law governs this dispute and Plaintiffs fail to raise an analogous claim under North Carolina General Statute § 75-1.1(a). As Defendants' brief notes, other district courts have dismissed UCL claims where another state's law applies under a contract's choice-of-law provision. See Century 21 Real Est. LLC v. All Pro. Realty, Inc., 889 F. Supp. 2d 1198, 1235 (E.D. Cal. 1998); Langer Juice Co. Inc. v. Stonhard, 2014 WL 346643 (C.D. Cal. Jan. 30, 2014).

For these reasons, the undersigned respectfully recommends Defendants' Motion to Dismiss Count VI be granted.

### G. Count VII – Negligence

To plead negligence in North Carolina, Plaintiffs "must show that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages resulted from the injury." Parker v. Town of Erwin, 243 N.C. App. 84, 110, 776 S.E.2d 710 (2015) (quoting Bostic Packaging, Inc. v. City of Monroe, 149 N.C. app. 825, 830, 562 S.E.2d 75, 79 (2002)). A claim for negligent misrepresentation requires that Plaintiff show "(1) that he justifiably relied (2) to his detriment (3) on the information prepared without reasonable care (4) by a defendant who owed a duty of care." Kamel v. Whalen, No. 3:20-CV-00324-RJS-DSC, 2020 WL 9459290 (W.D.N.C. Oct. 5, 2020) (citing GeoPlastics v. Beacon Dev. Co., 434 Fed. App'x. 256, 259-60 (4th Cir. 2011).

Under North Carolina law, a breach of contract will rarely support a negligence claim. The North Carolina Supreme Court has held "that '[o]rdinarily, a breach of contract does not give rise to a tort action by the promise against the promisor.'" Cleveland Const., Inc. v. Fireman's Fund Ins. Co., No. 3:09-CV-200-MU, 2009 WL 3754232 at *3 (W.D.N.C. Nov. 5,

2009) (quoting <u>Ports Authority v. Roofing Co.</u>, 294 N.C. 73, 240 S.E.2d 345, 350 (N.C. 1978,

<u>rejected on other grounds by</u> <u>Trustees of Rowan Tech. v. Hammond Assoc.</u>, 313 N.C. 230, 328

S.E.2d 274, 281-82 (N.C. 1985)). Exceptions to this rule are for:

> (1) harm that occurs 'to the person or property of someone other than the
> promisee,' (2) [harm that] occurs 'to the property of the promisee other than the
> property which was the subject of the contract, or was a personal injury to the
> promisee,' (3) [harm that] 'was loss of or damage to the promisee's property,
> which was the subject of the contract, the promisor being charged by law, as a
> matter of public policy, with the duty to use care in the safeguarding of the
> property from harm, as is the case of a common carrier, an innkeeper, or other
> bailee,' or (4) [harm that] 'was a willful injury to or a conversion of the property
> of the promise, which was the subject of the contract, by the promisor.'

<u>Cleveland Const.</u>, 313 N.C. at *3 (citing <u>Mason v. Yontz</u>, 102 N.C. App. 817, 403 S.E.2d 536,

538 (N.C. Ct. App. 1991)). Where none of the four factors are present, North Carolina courts

"acknowledge no negligence claim where all rights and remedies have been set forth in the

contractual relationship." <u>Regions Bank v. Fairway Indep. Mortg. Corp.</u>, No. 3:09-CV-534-DSC,

2010 WL 455045 (W.D.N.C. Feb. 2, 2010) (quoting <u>Kaleel Builders, Inc. v. Ashby</u>, 161 N.C.

App. 34, 42, 587 S.E.2d 470, 476 (2003)).

Here, Defendants argue that they owe no independent duty to Plaintiffs outside the MPA.

Doc. 38 at 17. Defendants argue that to state a claim for negligence based upon breach of

contract, Plaintiffs must show a legal duty independent of the contract. <u>See</u> <u>Id.</u> (citing <u>Hardin v.</u>

<u>New York Mem'l Park</u>, 730 S.E.2d 768 (N.C. Ct. App. 2012). This argument fails for two

reasons. First, as discussed above, Plaintiffs have plausibly pled the existence of a fiduciary duty,

which may exist independently of the parties' contractual duties to one another. Second,

Plaintiffs do not argue their negligence claims exclusively based on breach of contract. Plaintiffs

also argue that their claims include "negligent misrepresentations made before the MPA[sic] was

formed," which would not be based on breach of contract. Doc. 44 at 18.

Plaintiffs allege facts in the Complaint that Voutsas justifiably relied to his detriment on the information he received from the BAMS representative prior to applying for the Peter Marco merchant account. Doc. 10 at ¶¶13-19, 119. Plaintiffs further allege facts incorporated under their negligence count that the BAMS representative failed to warn Voutsas about the MATCH list, reserve account, and investigation procedures for chargebacks. Id. at ¶119. Finally, Plaintiffs allege that the BAMS representative had a duty to "act reasonably and in conformance with the applicable laws, rules, and regulations related to the provision of electronic payment processing services," and that the BAMS representative violated this duty. Id. at ¶ 118.  Plaintiffs have plausibly alleged facts sufficient to withstand a Motion to Dismiss for negligent representation.

For these reasons, the undersigned respectfully recommends Defendants' Motion to Dismiss Count VII be denied.

### H.  Count VIII – Declaratory Relief

Declaratory relief is a remedy and not a cause of action. Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010); see also CGM, LLC v. BellSouth Telecomm., Inc., 664 F.3d 46, 55-56 (4th Cir. 2011). In determining whether to grant declaratory relief, a court considers "whether a declaratory judgment will (1) 'serve a useful purpose in clarifying and settling the legal relations in issue;' or (2) 'afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.'" Chiste v. Hotels.com, 756 F. Supp. 2d at 407 (quoting Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992)).

Here, Plaintiffs seek several declarations related to whether the program guide governs the parties' relationship and actions the Defendants should take regarding the held funds and MATCH list. Declaratory relief is only available to Plaintiffs once Defendants' liability is established. Chiste v. Hotels.com, 756 F. Supp. 2d at 408. And the declarations Plaintiffs seek

have already been addressed by the law of the case doctrine or will be through resolution of their other claims. Declaratory relief is not properly addressed at this stage in the litigation.

For these reasons, the undersigned respectfully recommends Defendants' Motion to Dismiss Count VIII be <u>granted</u>.

**RECOMMENDATION**

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendants' Motion to Dismiss be <u>denied</u> with respect to Counts I, III, V, and VII, and <u>granted</u> with respect to Counts II, IV, VI, and VIII.

**NOTICE OF APPEAL RIGHTS**

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Synder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>, 109 F.3d at 201; <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the <u>Honorable Robert J. Conrad, Jr.</u>

**SO ORDERED AND RECOMMENDED.**

Signed: July 21, 2022

David S. Cayer
United States Magistrate Judge

22